UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEFENSHIELD INC.,

                              Plaintiff,

v.                                                          5:10-CV-1140
                                                            (GTS/DEP)
FIRST CHOICE ARMOR &
EQUIPMENT, INC.; and
D-BACK ACQUISITION CO.,

                              Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

BOND, SCHOENECK, & KING, LLP          CLIFFORD G. TSAN, ESQ.
  Counsel for Plaintiff                              DAVID L. NOCILLY, ESQ.
One Lincoln Center                               GEORGE R. MCGUIRE, ESQ.
Syracuse, New York 13202


GREENBERG TRAURIG, LLP                STEPHEN M. BUHR, ESQ.
  Counsel for Defendants                        BARRY J. SCHINDLER, ESQ.
54 State Street, 6th Floor                        WILLIAM W. STROEVER, ESQ.
Albany, New York 12207

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

          Currently before the Court in this patent infringement action filed by Defenshield, Inc.

("Plaintiff") against First Choice Armor & Equipment, Inc., and D-Back Acquisition Co.

("Defendants"), is Defendants' motions to dismiss for failure to state a claim and to transfer

venue to the Western District of North Carolina.  (Dkt. No. 11.)  For the reasons set forth below,

Defendants' motions are denied.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Plaintiff filed its Amended Complaint in this action on September 22, 2010.  (Dkt. No. 5.)  Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows.  On June 21, 2005, Plaintiff was awarded United States Patent No. 6,907,811 ("'811 patent") describing its Mobile Defensive Fighting Position ("MDFP"), a portable ballistics shield used to protect both government and private security personnel.  (*Id.*)  Defendants make, sell, offer to sell, use and/or import a similar ballistics shield referred to as the "Rolling Bunker," which contains each and every element of at least one claim of the '811 patent.  (*Id.*)  Defendants sell and/or offer to sell the Rolling Bunker to the public and governmental entities, including Fort Drum in Jefferson County, New York. (*Id.*)

Based on these factual allegations, Plaintiff's Amended Complaint claims that Defendants' manufacture and sale of the Rolling Bunker to government and public customers infringes on Plaintiff's rights as the holder of the '811 patent and constitutes patent infringement under 35 U.S.C. § 271.  (*Id.*)  Familiarity with the factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

B.      **Defendants' Motion**

On October 25, 2010, Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a motion to transfer venue, pursuant to 28 U.S.C. § 1404(a).  (Dkt. No. 11.) Generally, in support of its motions, Defendants argue as follows: (1) pursuant to 28 U.S.C. § 1498, a claim for patent infringement can not be sustained against a government contractor when

the patented invention is used or manufactured by or for the United States; (2) because 28 U.S.C. § 1498 relieves the Defendants of liability, the portion of the Plaintiff's infringement claim that is based on the sales offer of the "Rolling Bunker" to Fort Drum must be dismissed with prejudice because the Plaintiff failed to state a claim on which relief can be granted; and (3) without the conduct involving Fort Drum as a basis for Plaintiff's Amended Complaint, there is little, if any, connection to the Northern District of New York, and this action should be transferred to the Western District of North Carolina, which is the center of gravity of this litigation.  (Dkt. No. 11, at 1-5 [Defs.' Memo. of Law].)

Generally, in its response, Plaintiff argues as follows: (1) Defendants cannot meet the burden of proof required by 28 U.S.C. § 1498, which is an affirmative defense, in a Fed. R. Civ. P. 12(b)(6) motion; (2) Defendants cannot point to anything in the Amended Complaint that demonstrates that Defendants acted with the authorization or consent of the government as required to prevail under 28 U.S.C. § 1498; (3) a single non-governmental sale can be sufficient to render inapplicable the *de minimis* exception of 28 U.S.C. § 1498, and give the Court jurisdiction over the entire claim; (4) the Court has no authority to split Plaintiff's infringement claim into two whereby Plaintiff would be forced to maintain an action for infringement against the government pursuant to 28 U.S.C. § 1498 and another action against Defendants pursuant to 35 U.S.C. § 271; and (5) this action should not be transferred because the Court should give Plaintiff's choice of forum deference.  (Dkt. No. 17.)

Generally, in its reply, Defendants argue as follows: (1) Plaintiff alleged facts in its Amended Complaint that plausibly suggest the existence of all elements of 28 U.S.C. § 1498, including that the United States Army authorized Defendants' actions when the Army

3

specifically described Plaintiff's device in its Request for Quote ("RFQ"); (2) the *de minimis*

exception applies only when a defendant seeks to dismiss a plaintiff's complaint in its entirety,

and therefore it does not apply in this case because Defendants seek to dismiss only the portion

of the Amended Complaint relating to the Fort Drum sale; and (3) Plaintiff's choice of forum

should not be given deference beacause venue is not proper in the Northern District of New York

because the Court lacks personal jurisdiction.  (Dkt. No. 19.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

It has long been understood that a defendant may base a motion to dismiss for failure to

state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge

to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal

cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16

(N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are

appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a

"short and plain statement" and requiring that the statement "show[]" an entitlement to relief is

often at the heart of misunderstandings that occur regarding the pleading standard established by

Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F.

Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

4

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the

facts upon which [the claim is based]," it does mean that the pleading must contain at least

"some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be

enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of

course) that all the allegations in the complaint are true.  *Id*.[1]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks

and citations omitted].  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement."  *Twombly*, 550 U.S. at 556.

Because of the requirement of factual allegations plausibly suggesting an entitlement to

---

[1]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in
*Twombly*, was in no way abrogated by the Supreme Court's decision (two weeks later) in
*Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts
are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v.
Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added].  That statement was merely an
abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in
*Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in
order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47)
[emphasis added].  That statement did not mean that all pleadings may achieve the requirement
of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough
fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to
relief above the speculative level to a plausible level.  *See Rusyniak*, 629 F. Supp.2d at 214 &
n.35 (explaining holding in *Erickson*).

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  For purposes of Fed. R. Civ. P. 12(b)(6), "[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (internal quotation marks and citation omitted).

**B.      Legal Standard Governing the Consideration of Documents Outside the Pleadings Pursuant to Fed. R. Civ. P. 12(d)**

Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[, and] [a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Fed. R. Civ. P. 12(d).  However, such conversion is not necessary if the "matters" in question

consist of (1) documents attached to the complaint or answer, (2) documents incorporated by

reference in the complaint (and provided by the parties), (3) documents that, although not

incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court

can take judicial notice for the factual background of the case.  *L-7 Designs, Inc. v. Old Navy,*

*LLC*, No. 10-CV-0573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011).  "Where a document is

not incorporated by reference, the court may nevertheless consider it where the complaint relies

heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . .

.  However, even if a document is 'integral' to the complaint, it must be clear on the record that

no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear

that there exist no material disputed issues of fact regarding the relevance of the document."

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks

omitted).

### C.     Legal Standard Governing a Defendants Pursuant to 28 U.S.C. § 1498(a)

Section 1498(a) of Title 28 of the United States Code provides as follows:

> Whenever an invention described in and covered by a patent of the
> United States is used or manufactured by or for the United States
> without license of the owner . . . the owner's remedy shall be by
> action against the United States in the United States Court of Federal
> Claims. For the purposes of this section, the use or manufacture of an
> invention described in and covered by a patent of the United States
> by a contractor, a subcontractor, or an person, firm, or corporation for
> the Government and with the authorization or consent of the
> Government, shall be construed as use or manufacture for the United
> States.

28 U.S.C. § 1498(a).  In passing this statute, Congress erected safeguards protecting the

government's procurement process by insulating contractors from infringement actions that may

8

otherwise disrupt the supply chain.  *Coakwell v. U.S.*, 372 F.2d 508, 511 (Ct. Cl. 1967) (citing

*Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 343 [1928] [addressing the

predecessor to 28 U.S.C. § 1498, the Naval Appropriations Act of 1918]).  Under this statute, the

United States waives sovereign immunity and assumes liability for certain claims against its

contractors.  *See Zoltek Corp. v. U.S.*, 51 Fed. Cl. 829, 835 (Fed. Cl. 2002) ("[P]atent

infringement by the government constitutes a taking under the eminent domain theory . . ., [and

t]he Supreme Court has repeatedly held that the Constitution requires that the government

provide a remedy for all . . . takings."); *see also Windsurfing Int'l, Inc. v. Ostermann*, 534 F.

Supp. 581, 588 (S.D.N.Y. 1982).  In doing so, 28 U.S.C. § 1498(a) creates a cause of action

lying exclusively against the United States for the specific activities described therein. *TDM*

*Am., LLC v. U.S.*, 85 Fed. Cl. 774, 781 (Fed. Cl. 2009); *Crater Corp. v. Lucent Techs. Inc.*, 255

F.3d 1361, 1364 (Fed. Cir. 2001).  However, when a patent holder files an infringement action

against a private government contractor, 28 U.S.C. § 1498(a) acts as an affirmative defense

rather than a jurisdictional bar.  *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir.

2002) (citing *Manville Sales Corp. v. Paramount Sys., Inc.*,  917 F.2d 544, 554 [Fed. Cir. 1990]);

*see also Crater Corp.* 255 F.3d at 1364; *Sperry Gyroscope Co. v. Arma Eng'g Co.*, 271 U.S. 232,

235-36 (1926) (explaining  that the Naval Appropriations Act of 1918, the predecessor to 28

U.S.C. § 1498, created an affirmative defense rather than a jurisdictional bar).

     A private government contractor invoking 28 U.S.C. § 1498(a) as an affirmative defense

in an infringement suit is required to show that (1) the device was manufactured for the

government, and (2) the government authorized, or consented to, the manufacture of the device.

*Sevenson Envt'l., Inc. v. Shaw Envt'l., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007) (citing *Hughes*

*Aircraft Co. v. U.S.*, 534 F.2d 889, 897-98 [Ct. Cl. 1976]).  The first prong is satisfied when the

patented device is manufactured pursuant to a government contract and for the benefit of the government. *Sevenson*, 477 F.3d at 1366.  When the patented device is offered for sale in response to a government bid solicitation, the infringement is considered to be for the government.  *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986) (holding that where the purpose of the infringement was to comply with the government's bidding requirements, such action satisfies the requirements of 28 U.S.C. § 1498[a]).

At the bidding stage of the procurement process, the government's consent or authorization of the manufacture or use of a patented device (the second prong of 28 U.S.C. § 1498) can be either explicit or implicit. The government explicitly authorizes, or consents to, infringement by including a clause permitting the use of a device described in a United States patent in a bid solicitation.  *See Crater Corp. v. Lucent Tech., Inc.*, 255 F.3d 1361, 1368 (Fed. Cir. 1976) (holding that use of form authorization and consent language in a government contract established the second element of the affirmative defense); *see also* 48 C.F.R. § 27.201-2(a)(1) (stating that the form "Authorization and Consent" clause at 48 C.F.R. § 52.227–1 should be used in bid solicitations).  Where the 48 C.F.R. § 52.227-1 "Authorization and Consent" clause (or equivalent language) is not present in the solicitation, the government gives explicit authorization by including specifications that absolutely require the bidder to infringe a government patent.  *TVI*, 806 F.2d at 1060 (finding that although not necessary, such specifications are sufficient to establish explicit authorization).  The purpose of 28 U.S.C. § 1498 is to protect the government's procurement process by expanding the pool of eligible bidders beyond a single patent holder.  *TVI*, 806 F.2d at 1060.  In the context of a *bid solicitation*, 28 U.S.C. § 1498 is broadly applied so that it does not cut the government off from bidders and potential suppliers.  *Id.*

### D.      Legal Standard Governing a Motion to Transfer Venue

A district court may decide to transfer an action to another district in the interest of

justice and for the convenience of the parties and witnesses.  28 U.S.C. § 1404(a) ("For the

convenience of the parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where it might have been brought."); *see also*

*Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990); *Lead Indus. Ass'n v. Occupational Safety*

*& Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (citing cases); *Kelly v. Kelly*, 911 F. Supp.

70, 71 (N.D.N.Y. 1996) (Hurd, J.).  "The purpose of section 1404(a) is to prevent the waste of

time, energy and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense."  *Flaherty v. All Hampton Limousine, Inc.*, 01-CV-9939, 2002 WL

1891212, at *1 (S.D.N.Y. Aug. 16, 2002) (internal quotation marks omitted).  When considering

whether to transfer a case, a district court must conduct "a two-part test: (1) whether the action to

be transferred might have been brought in the transferee venue; and (2) whether the balance of

convenience and justice favors transfer."  *Advanced Fiber Tech. Trust v. J & L Fiber Serv. Inc.*,

07-CV-1191, 2008 WL 4890377, at *1 (N.D.N.Y. Nov. 12, 2008) (Homer, M.J.).

## IV.    ANALYSIS

### A.      Defendants' Motion to Dismiss Plaintiff's Claim Under 35 U.S.C. § 271 as
###         Applied to the Fort Drum Bid Solicitation

As stated above in Part I.B. of this Decision and Order, Defendants seek dismissal only

of the claim based on the offer of sale of the '811 patented device to Fort Drum because Plaintiff

failed to state a claim upon which relief could be granted by alleging facts that established an

affirmative defense under 28 U.S.C. § 1498(a).  (*See generally* Dkt. No. 11.)  In support of its

motion, Defendants have submitted to the Court a copy of a United States Army RFQ and an

affidavit explaining the RFQ's significance. (Dkt. No. 19, Attach. 2.)  In response, Plaintiff

argues, *inter alia*, that the Amended Complaint alleges a single, unified patent infringement

claim brought under 35 U.S.C. § 271, which is based on conduct involving private parties and

the government.  (Dkt. No. 17 at 13)  Plaintiff argues that the Court has no authority to sever its

sole cause of action and dismiss only a portion of the Amended Complaint.  (*Id.*)

After carefully considering the parties' arguments, the Court finds that the allegations

contained in Plaintiff's Amended Complaint do not, if taken as true, establish all of the elements

required under 28 U.S.C. § 1498.[2]  More specifically, 28 U.S.C. § 1498 requires Defendants to

show that (1) the alleged infringing device (the Rolling Bunker) was manufactured for the

government, and (2) the government authorized, or consented to, the manufacture of the Rolling

Bunker.  *Sevenson Envt'l., Inc.*, 477 F.3d at 1365 (citing *Hughes Aircraft Co. v. U.S.*, 534 F.2d

889, 897-98 [Ct. Cl. 1976]).

Here, the Court finds that Plaintiff's Amended Complaint alleges facts that, if taken as

true, establish the first element of a 28 U.S.C. § 1498 defense, by alleging that (1) Defendant

First Choice "makes, sells, offers to sell, uses and/or imports a certain barrier referred to as the

'Rolling Bunker' . . . to various governmental entities and the public," (2) Defendant D-Back

"became the successor in interest to [Defendant] First Choice by acquiring all of the assets of

[Defendant] First choice, including the [Rolling Bunker]," and (3) the Rolling Bunker

"contain[s] each and every element of at least one claim of [Plaintiff's] '811 patent. . . ."  (Dkt.

No. 5 at 3.)

---

[2]        *See In re Bernard L. Madoff Inv. Sec. LLC*, 11-CV-0012, 2011 WL 3897970, at
*8 (S.D.N.Y. Aug. 31, 2011) ("[I]n limited circumstances, a plaintiff can plead itself out of court
by unintentionally alleging facts (taken as true) that establish an affirmative defense .") [internal
quotation marks omitted], *accord, Levine v. AtriCure, Inc.*, 594 F. Supp.2d 471, 474-75
(S.D.N.Y. 2009) [collecting authorities].

However, the Court finds that Plaintiff's Amended Complaint does not allege facts that, if taken as true, establish the second element of a 28 U.S.C. § 1498 defense, which requires Defendants to demonstrate that the government authorized, or consented to, the manufacture of the Rolling Bunker. (*See generally* Dkt. No. 5.) 28 U.S.C. § 1498(a). Defendants attempt to compensate for this by providing the Court with a copy of a United States Army RFQ and an affidavit explaining the RFQ's significance. (Dkt. No. 19, Attach. 2.) Although the RFQ may contain evidence that the United States government authorized infringement of Plaintiff's '811 patent, the Court may not properly consider the RFQ in deciding Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), because the RFQ is not (1) attached to the Plaintiff's Amended Complaint, (2) incorporated by reference in Plaintiff's Amended Complaint, (3) integral to Plaintiff's Amended Complaint, or (4) the type of matter of which the Court may take judicial notice as factual background of the case. (*See generally* Dkt. No. 5.) *L-7 Designs, Inc.*, 2011 WL 2135734, at *1.

More specifically, the Court finds that the RFQ is not integral to Plaintiff's Amended Complaint because Plaintiff's factual allegations do not "rel[y] heavily upon its terms and effect" in order to assert its claim under 28 U.S.C. § 271. (*See generally* Dkt. No. 5.) *DiFolco*, 622 F.3d at 111. In any event, however, even if the Court did find the RFQ integral to Plaintiff's Amended Complaint, for the Court to take into consideration the RFQ, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111. Here, it is far from clear that "no dispute exists regarding the authenticity" of the RFQ because Defendants submitted the RFQ in reply to Plaintiff's opposition to Defendants' motion to dismiss. (Dkt. No. 19, Attach. 2.) As a result, Plaintiff has not had adequate opportunity to refute the authenticity or accuracy of the RFQ. Moreover, it is not clear whether,

without having conducted discovery, Plaintiff is properly equipped to refute or admit the RFQ's authenticity or accuracy.

For all of these reasons, Defendants' motion to dismiss for failure to state a claim based on 28 U.S.C. § 1498 is denied.

Having described the grounds on which the Court's decision is based (i.e., Defendants' failure to show that Plaintiff's Amended Complaint establishes each element required under 28 U.S.C. § 1498), the Court will now briefly describe the two grounds on which the Court's decision is *not* based: (1) Plaintiff's argument that the Court has no basis to split Plaintiff's infringement claim into two separate claims (so as to force Plaintiff to maintain one action for infringement against the government pursuant to 28 U.S.C. § 1498 and a second action against Defendants pursuant to 35 U.S.C. § 271); and (2) Plaintiff's argument that a single non-governmental sale can be sufficient to render inapplicable the *de minimis* exception of 28 U.S.C. § 1498, and confer upon the Court jurisdiction over the entire claim. (Dkt. No. 17.)

With regard to Plaintiff's first argument (i.e., that the Court has no authority to sever Plaintiff's sole cause of action and dismiss only a portion of Plaintiff's Amended Complaint), the Court finds that argument to be is meritless because, by applying 28 U.S.C. § 1498(a), the Court would not be severing a single claim.  Rather, if, hypothetically, 28 U.S.C. § 1498(a) does indeed apply, Plaintiff would be *required* to file its patent infringement claim under two separate,  mutually exclusive, statutory causes of action.  *Trojan, Inc. v. Shat-R-Shield, Inc.*, 885 F.2d 854, 856 (Fed. Cir. 1989) (stating that the plaintiff's *only recourse* for government authorized infringement is to sue the government in the Court of Claims);  *Motorola, Inc. v. U.S.*, 729 F.2d 765, 768 (Fed. Cir. 1984) (explaining that claims brought under 28 U.S.C. § 1498(a) against the government are distinct and separate from 35 U.S.C. § 271 patent infringement

claims against private parties).  More specifically, Plaintiff would be required to file its claim for

patent infringement that arises out of the use of, manufacturing of, sale of, and/or offer to sell the

Rolling Bunker to the government against the United States government pursuant to 28 U.S.C. §

1498; *and* Plaintiff would be required to file its claim for patent infringement that arises out of

the use of, manufacture of, sale of, and/or offer to sell the Rolling Bunker in the private market

against Defendants pursuant to 35 U.S.C. § 271.

Congress established an exclusive cause of action against the government in 28 U.S.C. §

1498(a), and those claims against the government must be brought in the Court of Claims.  *TDM*

*Am.*, 85 Fed. Cl. at 781; *Crater Corp.* 255 F.3d at 1364.  An action against the government

pursuant to 28 U.S.C. § 1498(a) is not governed by Title 35 of the United States Code or any

other concepts of patent infringement.  *Motorola, Inc.*, 729 F.2d at 768.  Instead, it is governed

by the doctrine of eminent domain.  *Id.*  In filing a 28 U.S.C. § 1498(a) action, a plaintiff seeks

just compensation for the government's unauthorized taking of the patented device, not damages

for infringement.  *Id.*  Although the two causes of action are similar, a suit under 28 U.S.C. §

1498(a) is *separate from* and *parallel to* a an infringement action pursuant to 35 U.S.C. § 271.

*Id.*  These two statutes create separate causes of action that are supported by mutually exclusive

factual allegations.

When read in conjunction, 35 U.S.C. § 271 and 28 U.S.C. § 1498(a) require a plaintiff to

file two separate claims when alleging both private and government authorized infringement.[3]

For these reasons, the Court finds that, if it determined appropriate to do so (which it does not

---

[3]        This holding is consistent with case law from other jurisdictions.  *See, e.g,, Evans v. McDonnell Aircraft Corp.*, 395 F.2d 359 (8th Cir. 1968); *Neff Instrument Corp. v. Cohu Elecs., Inc.*, 269 F.2d 668 (9th Cir. 1959); *Molinaro v. Watkins-Johnson CEI Div.*, 359 F. Supp. 467 (D. Md. 1973); *Pierce v. Submarine Signal Co.*, 25 F. Supp. 862 (D. Mass. 1939).

under the circumstances), it has the authority, pursuant to 28 U.S.C. § 1498(a), to dismiss Plaintiff's claim based on the sales offer to Fort Drum.

With regard to Plaintiff's second argument (i.e., that a single non-governmental sale can be sufficient to [a] render inapplicable the *de minimis* exception of 28 U.S.C. § 1498, and [b] thereby give the Court jurisdiction over the entire claim), the Court finds that argument to be meritless. Plaintiff misinterprets the *de minimis* exception to 28 U.S.C. § 1498. The *de minimis* concept is a common law rule that relieves a defendant of liability for private sales that are so trivial they should be disregarded. *J & G Dev. Co., Inc. v. All-Tronics, Inc.*, 198 F. Supp. 392, 395 (E.D.N.Y. 1961). It is an affirmative defense that must be *asserted by the defendant* in conjunction with 28 U.S.C. § 1498(a). *J & G Dev. Co., Inc.*, 198 F. Supp. at 395. When successfully established, it does not divest the district court of jurisdiction. *See id.* Instead, it excuses only those private sales that meet the strict requirements of the *de minimis* rule. *Systron-Donner Corp., v. Palomar Sci. Corp.*, 239 F. Supp. 148, 151 (N.D. Cal. Feb. 16, 1965). This clearly establishes that 28 U.S.C. § 1498(a) and the *de minimis* rule apply to two discrete types of infringement. *Compare J & G Dev. Co., Inc.*, 198 F. Supp. at 395 (explaining that the *de minimis* rule applies to *private* infringement not protected by 28 U.S.C. § 1498[a]), *and Systron-Donner Corp.*, 239 F. Supp. at 151 (noting that application of the *de minimis* rule depends on the proportion of infringing *private* sales to overall sales) *with* 28 U.S.C. § 1498(a) (stating that only *government authorized* infringement is protected). By its express terms, 28 U.S.C. § 1498(a) relieves a government contractor of liability *only* for infringement that is authorized by and for the benefit of the Government. *TDM Am., LLC,* 85 Fed. Cl. 781; *Crater Corp.*, 255 F.3d 1364. Conversely, the *de minimis* rule relieves a contractor of liability for other trivial *non-governmental* sales. *J & G Dev. Co., Inc.*, 198 F. Supp. at 395.

16

As a result, the Court rejects Plaintiff's second argument for two reasons. First, the *de minimis* rule is irrelevant in deciding this motion to dismiss. It is an affirmative defense that, generally, must be asserted by the defendant. In this case, Defendants have neither claimed shelter under the rule nor sought dismissal of any of the alleged private acts of infringement to which the *de minimis* rule might apply. Defendants are only seeking dismissal based on government-authorized infringement, which falls outside the application of the *de minimis* rule.

Second, Plaintiff's interpretation of the *de minimis* rule is in contradiction with the plain terms of 28 U.S.C. § 1498. Allegations of private infringement do not give the Court authority to grant a remedy for government-authorized infringement. Where it is established that the manufacture was for the United States, and with its authorization, 28 U.S.C. § 1498(a) precludes the district court from granting a remedy against the defendant manufacturer. Additional private sales, in quantities greater than *de minimis*, simply do not invalidate a 28 U.S.C. § 1498(a) defense for authorized government infringement. Such an interpretation violates the plain terms of the statute. To hold otherwise would require any party asserting a 28 U.S.C. § 1498(a) affirmative defense to prove, as an element of the defense, that no private sales were made in quantities larger than *de minimis*. This is simply not a statutory requirement of 28 U.S.C. § 1498(a), nor is it an element found in any controlling case law. Plaintiff's interpretation would transform the *de minimis* rule from an affirmative defense protecting Government contractors who make trivial private sales into a broad exception that guts § 1498(a) of its ability to protect the Government's procurement process. For these reasons, the Court rejects Plaintiff's *de minimis* argument as set forth in Plaintiff's opposition to Defendants' motion to dismiss.

**B.      Defendants' Motion to Transfer Venue to the Western District of North Carolina**

Under federal law, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).[4] However, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). As a result, motions to transfer venue are subject to "a two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer." *Rescuecom Corp. v. Chumley*, 522 F. Supp.2d 429, 448 (N.D.N.Y. 2007) (Scullin, J.).

Whether to transfer a case is within a court's discretion. *Dixon v. Fischer*, 07-CV-1157, 2008 WL 141786, at *1 (N.D.N.Y. Jan. 11, 2008) (Homer, M.J.).  The party seeking transfer bears the burden of proof; it is the moving party's responsibility "to establish in [the] pleadings and affidavits the conditions necessary to justify transfer."  *Dixon,* 2008 WL 141786, at *1. Ultimately, any transfer must serve "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Rescuecom Corp.*, 522 F. Supp.2d at 448.

---

[4]      *See also Tigercat Indus., Inc. v. Deere & Co.*, No. 05-CV-761S, 2007 WL 1087564, at *1 (W.D.N.Y. Apr.9, 2007) ("[T]he test for venue for a corporate defendant in a patent infringement case is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced." [internal quotation marks omitted.]); *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp.2d 115, 116-17 (S.D.N.Y. 2005); *Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp.2d 263, 267-68 (N.D.N.Y. 2003) (McCurn, J.) (holding that "[sections] 1391(c) and 1400(b) should be read coextensively instead of the latter being the exclusive authority for determination of venue in patent infringement cases . . . [and that the district in question] will be deemed a proper venue if it is determined that [defendant] is subject to personal jurisdiction there . . . .").

### 1.     Defendants Contest Personal Jurisdiction and Improper Venue

Defendants' motion to transfer was filed under 28 U.S.C. § 1404(a), requesting that the case be moved to a more convenient forum.  (Dkt. No. 11, Attach. 1 at 9-13.)  In that motion, Defendants fail to argue that the Court lacks personal jurisdiction or that venue is improper in the Northern District of New York.  (*See generally* Dkt. No. 11.)  However, in its reply to Plaintiff's opposition to Defendants' motions to dismiss and transfer venue, Defendants make both of these arguments.  (Dkt. No. 19 at 9-10.)  As an initial matter, the Court rejects these arguments, because Defendants' reply was prohibited by the Local Rules of Practice for this Court.[5]  This violation of the Court's rules governing motion practice was prejudicial to Plaintiff, which was not afforded an opportunity to respond to Defendants' late-blossoming arguments.  In the alternative, the Court rejects these arguments for the reasons set forth below.

### a.     Defendants' Argument that the Court Lacks Personal Jurisdiction

Rule 12(b) of the Federal Rules of Civil Procedure requires that a defense based on lack of personal jurisdiction to be asserted by motion under Fed. R. Civ. P. 12 or in a responsive pleading if one is allowed.  Fed. R. Civ. P. 12(b).  Here, Defendants did not contest the personal jurisdiction of the Court in their motions to dismiss and transfer venue.  (*See generally* Dkt. No. 11, Attach 1.)  Defendants argue, in their reply, that they contested personal jurisdiction in their omnibus motion by stating as follows:

> [W]ithout [Plaintiff's] alleged offer to sell at Fort Drum to the

---

[5]     A motion to transfer venue under 28 U.S.C. § 1404(a) is non-dispositive in nature. *Cagle v. Cooper Cos., Inc.*, 93-CV-8970, 1996 WL 514864, at *1 (S.D.N.Y. Sept. 10, 1996). The Local Rules of Practice for this Court permit the moving party to submit a reply on a non-dispositive motion only upon leave of the Court.  N.D.N.Y. L.R. 7.1(b)(2).  The Court will not consider any reply submitted in violation of that rule without good cause shown.  N.D.N.Y. L.R. 7.1(b)(3).

> United Stated [sic] government, ***the only connection*** between the
> Northern District of New York and this litigation is ***the building***
> ***that houses Defenshield***.  This is a case ***concerning a North***
> ***Carolina defendant and facts that occurred or were based out of***
> ***North Carolina***.

(Dkt. No. 19 at 5 [emphasis in original].)  However, the quoted text is taken from a portion of

Defendants' memorandum of law in support of their motion to transfer venue, not in support of

their motion to dismiss.  (*Id.*)  In addition, the quoted text does not contest, mention, or even

reference personal jurisdiction.  (*Id.*)  Finally, and most importantly, Defendants failed to file a

motion under Fed. R. Civ. P. 12(b)(2), as identified in their Notice of Motion. (Dkt. No. 11.)  For

all of these reasons, the Court finds that any defense based on lack of personal jurisdiction is

barred by Fed. R. Civ. P. 12(b).

In any event, the Court finds that Defendants consented to personal jurisdiction in this

action.  Defendants' counsel entered more than a general appearance as counsel of record on

their behalf and filed two motions, neither of which contested personal jurisdiction under Fed. R.

Civ. P. 12(b)(2).  These actions demonstrate that Defendants consented to the Court's personal

jurisdiction.  *Kerr v. Compagnie De Ultramar*, 250 F.2d 860, 864 (2d Cir. 1958); *Backo v. Local*

*281, United Bhd. of Carpenters and Joiners*, 308 F. Supp. 172, 176 (N.D.N.Y.1969)

(MacMahon, J.), *aff'd*, 438 F.2d 176 (2d Cir.1970), *cert. denied*, 404 U.S. 858 (1971).

### b.      Defendants' Argument that Venue Is Improper

Defendants' motion to transfer was brought under 28 U.S.C. § 1404(a), which

"presupposes that the action has been brought in a *proper* venue but authorizes its transfer to

another district, also proper, but also more suited to the convenience of witnesses and the needs

of justice."  Siegel, Commentary, 28 U.S.C. § 1404 (1996) (emphasis added).  In analyzing a

motion to transfer under 28 U.S.C. § 1404(a), the appropriateness of the original venue is not

considered because 28 U.S.C. § 1406 provides the remedy for actions brought in an improper

venue.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue

in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such

case to any district or division in which it could have been brought.")  For all of these reasons,

the Court rejects Defendants' argument that venue is improper in the Northern District of New

York (Dkt. No. 19 at 10).

> **2.      Whether the Action Could Have Been Brought in the Western District
> of North Carolina**

For the reasons articulated by Defendants in their memorandum of law in support of their

motion to transfer venue, the Court agrees that this action could have properly been brought in

the Western District of North Carolina.[6]  (Dkt. No. 11, Attach. 1 at 10.)

> **3.      Balancing of Convenience and Justice**

Once it has been established that the action could have been brought in the transferee

district, the resolution of a motion to transfer venue lies "within the broad discretion of the

district court and [is] determined upon notions of convenience and fairness on a case-by-case

basis."  *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp.2d 729, 730

(S.D.N.Y. 1998).  A non-exclusive list of factors courts routinely consider in making this

determination include the following:

> (1) the convenience of witnesses; (2) the convenience of the parties;
> (3) the location of relevant documents and the relative ease of access
> to those sources of proof; (4) the situs of the operative events in issue;
> (5) the availability of process to compel the attendance of unwilling
> witnesses; (6) the relative means of the parties; (7) the comparative
> familiarity of each district with the governing law; (8) the weight
> accorded a plaintiff's choice of forum; and (9) judicial efficiency and
> the interests of justice.

---

[6]      The Court notes that Plaintiff does not appear to contest this fact in its
memorandum of law in opposition to Defendants' motion to transfer venue.  (Dkt. No. 17 at 15.)

*Amersham Pharmacia Biotech, Inc.*, 11 F. Supp.2d at 730.  "No individual factor is determinative and a court has discretion to weigh each factor to reach a fair result."  *Id.* The Court addresses each factor below.

### a.    Convenience of Witnesses

"Convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 249 (N.D.N.Y. 2001) (Kahn, J.).  An evaluation of this factor involves "more than a mere tally of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Advanced Fiber Techn. Trust*, 2008 WL 4890377, at *2.  Rather, the Court should "qualitatively evaluate the materiality of the testimony that witnesses may provide." *Id.*; *see also The Research Found. of State Univ. of New York v. Luminex Corp.*, 07-CV-1260, 2008 WL 4822276, at *3 (N.D.N.Y. Nov. 3, 2008) (Treece, M.J.) ("Courts should consider both the number of witnesses located in a given venue and the relative salience of their testimony.").

In support of their motion to transfer venue, Defendants offer an declaration from Defendant D-Back's Chief Executive Officer, Daniel E. Walsh.[7]  (Dkt. No. 11, Attach. 3.)  In his declaration, Mr. Walsh identifies only two potential witnesses that are "knowledgeable about the design, manufacture and sale of the allegedly infringing rolling bunkers."  (*Id.* at 1.)  Each of the witnesses are located in North Carolina.  (*Id.* at 1-2.)  Mr. Walsh also declares that "[D]efendants are unaware . . . of any non-party witnesses who would refuse to appear in either [forum]."  (*Id.* at 2.)  In Plaintiff's opposition to Defendants' motion, Plaintiff specifically identifies nine

---

[7]        The Court notes that, although Defendants' were not permitted to file a reply in support of its motion to transfer venue, which was not considered in evaluating this motion, it offers no additional support.

potential witnesses, including the inventor of Plaintiff's '811 patent, all of which are located in the Northern District of New York.  (Dkt. No. 17 at 16-17.)  Remaining mindful that this factor is "more than a mere tally of witnesses," the Court finds this factor to be neutral, because the parties' potential witness appear to offer equally material information.  *Advanced Fiber Techn. Trust*, 2008 WL 4890377, at *2.

        **b.**      **Convenience of Parties**

Defendant First Choice is a Massachusetts corporation, with offices in Spindale, North Carolina; Defendant D-Back is a Delaware Corporation, with offices in Phoenix, Arizona; Plaintiff is a New York corporation, with its principal place of business in East Syracuse, New York.  For the same reason that it would be inconvenient for Plaintiff to travel to the Western District of North Carolina, it would be inconvenient for Defendants to travel to the Northern District of New York.  As a result, the Court finds this factor to be neutral.

        **c.**      **Location of Relevant Documents and Relative Ease of Access to Those Sources of Proof**

"The location of relevant documents once carried significant weight in this analysis and in patent infringement cases is usually produced from the accused infringer."  *Advanced Fiber Techn. Trust*, 2008 WL 4890377, at *4 (internal quotation marks omitted).  "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Id.* (internal quotation marks omitted). In evaluating the significance of the location of relevant documents, the location of the defendant's documents weighs in favor of venue being laid in that location, because in a patent infringement action, the bulk of the relevant evidence is in the possession of the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Defendants argue that this factor weighs in favor of transfer because Defendant D-Back maintains its physical files and records regarding the Rolling Bunker in North Carolina. (Dkt.

No. 11, Attach. 1, at 11; Dkt. No. 11, Attach. 3 at 2.)  Additionally, the Rolling Bunkers are

manufactured and staged in North Carolina.  (*Id.*)  Because "the location of the defendant's

documents weighs in favor of venue being laid in that location," the Court finds that this factor

weighs in favor of transferring the case to the Western District of North Carolina.

### d.        Locus of the Operative Events in Issue

Operative facts in a patent infringement action include those relating to the design,

development, and production of a patented product. *Fuji Photo Film Co., Ltd. v. Lexar Media,*

*Inc.*,  415 F. Supp.2d 370, 375 (S.D.N.Y. 2006); *Invivo Research, Inc. v. Magnetic Resonance*

*Equipment Corp.*, 119 F. Supp.2d 433, 439 (S.D.N.Y. 2000) (citing *Bionx Implants, Inc. v.*

*Biomet, Inc.*, 99-CV-0740, 1999 WL 342306, at *4 [S.D.N.Y. May 27, 1999]).  Similar

information regarding the allegedly infringing product is also vital in adjudicating an

infringement suit.  *Amersham Pharmacia Biotech, Inc.*, 11 F. Supp.2d at 730.  Also relevant to

consideration of this factor is the area in which the allegedly infringing device was sold or

offered for sale. *Invivo Research, Inc.*, 119 F. Supp.2d at 439.  However, "[w]here a party's

products are sold in many states, sales alone are insufficient to establish a material connection to

the forum and to override other factors favoring transfer." *Id.* (quoting *Bionx Implants*, 1999

WL 342306, at *4 [citations omitted]).  As a result, venue analysis may demonstrate that there

multiple loci of operative facts.  *Atl. Recording Corp. v. Project Playlist, Inc.*,  603 F. Supp.2d

690, 696-97 (S.D.N.Y. 2009); *Adams v. Key Tronic Corp.*, 94-CV-0535, 1997 WL 1864, at *4 n.

1 (S.D.N.Y. Jan. 2, 1997); *Kwatra v. MCI, Inc.*, 96-CV-2491, 1996 WL 694444, at *3-4

(S.D.N.Y. Dec. 3, 1996).

Defendants rely on *Amersham Pharmacia Biotech, Inc.* in arguing that the locus of

operative events is determined by the site where the infringing device was developed.  (Dkt. No.

11, Attach. 1 at 12.)  *Amersham Pharmacia Biotech, Inc.*, 11 F. Supp.2d at 730.  The Court finds

Defendants' reliance misplaced because, while certainly an important factor, the situs of

development of the infringing device is not alone determinative. *Amersham Pharmacia Biotech,*

*Inc.*, 11 F. Supp.2d at 730. To the contrary, both *Amersham Pharmacia Biotech, Inc.* and *Invivo*

*Research, Inc.* articulate other factors that must be considered, including the design,

development, and production of the *patented* product. *Id.*; *Invivo Research, Inc.*, 119 F. Supp.2d

at 439. Because Plaintiff's patented product is designed, developed, and manufactured in

transferor forum, and Defendants' allegedly infringing product is designed, developed, and

manufactured in the proposed transferee's forum, the Court finds that location of none of the

events is determinative. In addition, although Plaintiff alleged that the Rolling Bunkers are

offered for sale in the Northern District of New York (Dkt. No. 5 at 13), the Court lacks

sufficient factual support to determine the significance of this offer in the context of Defendants'

overall sales.

       For all of these reasons, the Court finds this factor to be neutral.

       **e.**     **Availability of Process to Compel Attendance of Unwilling**
                **Witnesses**

       Rule 45 of the Federal Rules of Civil Procedure limits a district court's power to

subpoena a witness to "within 100 miles of the place specified for the deposition, hearing, trial,

production, or inspection." Fed. R. Civ. P. 45(b)(2). "In determining whether a change of venue

is appropriate, the Court will . . . examine the ability to compel the attendance of witnesses."

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp.2d 325, 332-33 (E.D.N.Y. 2006). The

availability of compulsory process "is an important consideration in transfer motions." *Int'l Sec.*

*Exch., LLC v. Chicago Bd. Options Exch.*, 06-CV-13445, 2007 WL 1541087, at *4 (S.D.N.Y.

May 24, 2007). However, "this factor is generally relevant only with respect to third-party

witnesses, since employees of the parties will as a practical matter be available in any venue by

virtue of the employment relationship." *Ripmax Ltd. v. Horizon Hobby, Inc.*, 07-CV-386, 2007 WL 2049033, at *4 (D. Conn. June 25, 2007) (internal quotation marks omitted).

In its motion to transfer venue, Defendants state that all of their witnesses would willingly appear in the Northern District of New York.  (Dkt. No. 11, Attach. 1 at 12.) Defendants' inability to articulate any unfairness in maintaining venue in the Northern District of New York as it relates to this factor weighs against transfer.  In addition, Plaintiff explains that certain of its non-party witnesses are not subject to Fed. R. Civ. P. 45 subpoena power in the Western District of North Carolina.  (Dkt. No. 17 at 19.)  For these reasons, the Court finds that this factor weighs against transfer.

### f.      Relative Means of Parties

"Where a disparity exists between the means of the parties . . ., the court may consider the relative means of the parties in determining whether to transfer."  *Miller v. Bombardier, Inc.*, 93-CV-0376, 1993 WL 378585, at *5 (S.D.N.Y. Sept. 23, 1993).  The parties have conceded that this factor is neutral, and the Court agrees.

### g.      Comparative Familiarity of Each District with Governing Law

This case involves questions of federal law, and "any district court may handle a patent case with equal skill."  *Bionix Implants, Inc.*, 1999 WL 342306, at *4.  As a result, again, the parties have conceded that this factor is neutral, and the Court agrees.

### h.      Weight Accorded to Plaintiff's Choice of Forum

Generally, "[a] plaintiffs choice of forum is entitled to considerable weight and should not be disturbed unless other factors weight strongly in favor of transfer."  *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp.2d 325, 333 (E.D.N.Y. 2006); *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-71 (2d Cir. 2001) ("[U]nless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed." [internal quotation marks

omitted.]).  "However plaintiff's choice of forum is not entitled to great weight when the
operative facts have little or no connection with the transferor forum, or when the plaintiff does
not reside in his chosen forum."  *Neil Bros. Ltd.*, 425 F. Supp. 2d at 333.

Defendants argue that the Court should give little deference to Plaintiff's choice of forum
in the Northern District of New York because "none of the operative facts of th[is] action
occur[ed] in the forum selected by the plaintiff."  (Dkt. No. 11 at 9 [quoting *Wagner v. New York
Marriot Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) (Mordue, C.J.)]).  While
Defendants aptly quote this well-affirmed legal principle from *Wagner* for this well-affirmed
legal principle, they ignore the operative facts on which its holding turns.  *Wagner* involved a
slip-and-fall injury that occurred in the defendant's hotel in the Southern District of New York.
502 F. Supp. 2d at 314.  The only connection to the plaintiff's chosen forum, the Northern
District of New York, was the location of his treating physician.  *Id*. at 316.  However, the
isolated nature of this slip and fall case is factually inapposite to the case at hand.

Here, Plaintiff chose to bring this action in the Northern District of New York, is a
resident of this forum, and maintains a preference to continue litigating in this forum.  In
addition, the MDFP was designed in the Northern District of New York by Collins White, who
also currently resides in this forum.  These facts are significant to an action for patent
infringement and support Plaintiff's choice of forum.  *Advanced Fiber Tech. Trust,* 2008 WL
4890377, at *6.  Absent a "balance [that] is strongly in favor of the defendant, the plaintiffs
choice of forum should rarely be disturbed."  *Iragorri*, 274 F.3d at 70-71.

For all of these reasons, the Court finds that this factor weighs against transfer.

### i.      Judicial Efficiency and Interests of Justice

In its motion to transfer, Defendants offer only a brief and conclusory argument
regarding this factor.  (Dkt. No. 11, Attach. 1 at 13.)  Defendants cite no supporting case law, nor

do they address any considerations courts have deemed important in evaluating this factor. (*Id.*)
The Court finds that transfer the case to the Western District of North Carolina would merely
shift the burden of inconvenience from one party to another. This is insufficient to disturb the
Plaintiff's choice of forum. *The Research Found. of State Univ. of New York*, 2008 WL
4822276, at *8.[8]  For these reasons, the Court finds this factor to be neutral.

### 4. Conclusion

Of the nine factors considered above, only one factor weighs in favor of transferring
venue to the Western District of North Carolina (i.e., the location of relevant documents), two
factors weigh in favor of maintaining venue in the Northern District of New York (i.e., the
availability of process to compel the attendance of witnesses, and the weight accorded to a
plaintiff's choice of forum), and six factors are neutral.  As a result, the Court finds that none of
the factors so heavily outweigh the deference a court is required to afford Plaintiff's choice of
forum.  For this reason, Defendants' motion to transfer venue is denied.

---

[8]       The Court notes that in its reply, Defendants offered additional support as to why
this factor weighs in favor of transfer. (Dkt. No. 19 at 14.)  More specifically, Defendants argue
that they filed a Complaint in the Western District of North Carolina on November 10, 2010,
involving the same subject matter as the instant case.  (*Id.*)  Initially, the Court notes that, for the
reasons stated in note 5 of Part IV.B.1. of this Decision and Order, the Court is not permitted to
consider any arguments Defendants set forth in their reply to the extent they relate to their
motion to transfer venue.  In any event, however, the existence of a pending matter involving the
same parties and subject matter does not, by itself, support transfer.  *Van Dusen v. Barrack*, 376
U.S. 612, 644 (1964).  The operative consideration is whether the actions can be consolidated.
*Van Dusen*, 376 U.S. at 644.  Defendants offer no factual or legal support for their conclusion
that there is a "high likelihood that, upon . . . transfer," the two cases would be consolidated.
(Dkt. No. 19 at 14.)  Without more, the Court cannot give any weight to Defendants' argument.
Moreover, however, Defendants' filed its Complaint in the Western District of North Carolina
*after* Plaintiff filed its Complaint in this action.  (Dkt. No. 1 [Plf.'s Cmplt. filed 9/22/2010].)
Consistent with the first-to-file rule, courts should not consider a subsequently filed action in a
transferee forum to support transfer.  *See First City Nat'l Bank and Trust Co. v. Simmons*, 878
F.2d 76, 79-80 (2d Cir. 1989) ("Where there are two competing lawsuits, the first suit should
have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . .
giving priority to the second." [internal quotation marks omitted].).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendants' motion to transfer venue (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendants shall file and serve an answer to Plaintiff's Amended Complaint by **APRIL 12, 2012**; and it is further

**ORDERED** that this case is referred back to Magistrate Judge David E. Peebles for a Rule 16 pretrial conference.

Dated: March 29, 2012
       Syracuse, New York

                                      Hon. Glenn T. Suddaby
                                      U.S. District Judge