IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DEFENSHIELD, INC.,

        Plaintiff,

                                  Civ. Action No.
  v.                           5:10-CV-1140 (GTS/DEP)

FIRST CHOICE ARMOR & EQUIPMENT,
INC., and D-BACK ACQUISITION CO.,

        Defendants.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

BOND, SCHOENECK LAW FIRM       GEORGE McGUIRE, ESQ.
One Lincoln Center                         CLIFFORD TSAN, ESQ.
Syracuse, New York 13202             DAVID NOCILLY, ESQ.

FOR DEFENDANTS:

GREENBERG, TRAURIG LAW FIRM    BARRY SCHINDLER, ESQ.
200 Park Avenue                            WILLIAM STROEVER, ESQ.
P.O. Box 677                                 STEPHEN BUHR, ESQ.
Florham Park, New Jersey 07932

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

      Plaintiff Defenshield, Inc. ("Defenshield"), a corporation headquartered in East Syracuse, New York, has commenced this action against two competitors, defendants First Choice Armor & Equipment, Inc.

and D-Back Acquisition Co., alleging patent infringement. The subject of the patent in suit is a moveable, bullet resistant barrier, which is referred to as the "Mobile Defensive Fighting Position." Defenshield, an assignee who has practiced the patent through the development of a ballistic shield, alleges infringement based upon defendants' manufacture and sale of an of accused competing device, marketed as the "Rolling Bunker."

The parties disagree over the proper definition to attribute to the term "channel," as utilized in the claims of the patent at issue, and have therefore asked that the court construe the term. Their dispute requires the court to determine whether "channel" includes the structure defining the space, or instead refers only to the space created by the structure.

The task of claim construction has been referred to me for the issuance of a report and recommendation to the assigned district judge. For the reasons set forth below, while I conclude that the term is one that a jury is capable of ordinarily understanding and applying, I nonetheless recommend that the term be construed, and recommend a construction that, while not one advocated by either party, is more closely aligned with plaintiff's proposed construction, and rejects defendants' structural argument.

I. BACKGROUND

At the center of this case is United States Patent No. 7,849,781 ("'781 Patent"), issued to inventor Collins White on December 14, 2010, and assigned to Defenshield.[1] The invention disclosed in the '781 Patent is a movable barrier constructed of a bullet resistant material, and constructed in a manner that allows for easy disassembly and transportation. '781 Patent, Abstract. The overall design of the patented device is illustrated in the following figure, representing one embodiment of the invention:



'781 Patent, Fig. 1.

---

[1] The '781 Patent is annexed as Exhibit A to plaintiff's second amended complaint. Sec. Am. Compl. Exh. A (Dkt. No. 33) at 6-15. Reference to the patent in this decision will be made using its shorthand annotation, and by column and line (*e.g.*, '781 Patent, 2:10-15).

The device disclosed in Figure 1 includes a base unit **16** and a transparent upper wall **18**, both of which are composed of bullet resistant materials, and are "removably interconnected" to one another. '781 Patent, 2:16-26. The base unit **16** consists of a front wall **20** and two perpendicular side walls **22**, **24**.[2] *Id.* at 2:27-29. To make the shield readily moveable, casters **26** are mounted on the bottom edges of the side walls **22**, **24**, furthest from the front wall **20**, and a second set of casters **28** are connected to one another by an axle **30** pivotally attached to the front wall **20** in order to be movable into or out of engagement with the ground. *Id.* at 2:29-33. Handles **38** are mounted to the exterior surfaces of the side walls **22**, **24** in order to assist in moving the barrier. *Id.* at 2:38-40.

The feature at the heart of the claim construction dispute is a bracket assembly used to connect the upper wall **18** to the base unit **16**. '781 Patent, 2:41-42. A cross section of the bracket assembly is depicted in Figure 5 of the '781 Patent, as follows:

---

[2] Although the portion of the specification that describes this part of the invention identifies the base unit as **14**, '781 Patent 2:27, the court has construed this as an error based upon the fact that the item depicted as **14** in Figure 1 is actually the shooter from whom the user of the patented device seeks protection. '781 Patent, Fig. 1.



FIG. 5

'781 Patent, Fig. 5.  That bracket assembly is comprised of an S-shaped member **40** that extends along a longitudinal axis and includes an upper channel member **42** that engages the upper edge of the front wall **20**, and a lower channel member **44** into which the bottom edge of the upper wall **18** is positioned.[3]  *Id.* at 2:41-48.

The '781 Patent includes fourteen claims, three of which are independent (Claims 1, 9, and 12), and seven of which are implicated by this action.  '781 Patent, 2:59-4:52.  Claim 1, which provides useful context, reads as follows:

> 1. A barrier for placement on a supporting surface, the barrier comprising:
>
> a freestanding base assembly comprising a front wall extending in a substantially upward direction relative to the supporting surface, the front wall having an upper edge remote from the supporting surface;

---

[3] The patent advises that, alternatively, the lower channel member **44** could be attached to or integrally formed with the front wall **20**.  '781 Patent, 2:47-49.

5

> a bracket mechanically coupled to the front wall and comprising a first channel, the first channel positioned below the upper edge of the front wall
>
> a side channel formed at an angle relative to the first channel and extending upward beyond the upper edge of the front wall; and
>
> an upper wall comprising at least a portion that is substantially transparent and ballistic resistant, the upper wall having a lower edge, at least a portion of the lower edge received in the first channel and a second portion of the upper wall received in the side channel,
>
> wherein the upper wall extends upward from the first channel, the lower edge of the upper wall is positioned below the upper edge of the front wall, and a portion of the upper wall overlaps with the front wall, and
>
> further wherein the upper wall is movable relative to the first channel and removable from the base assembly by movement of the upper wall away from the first channel.

*Id.* at 2:59-3:15.

## II. DISCUSSION

### A. Claim Construction: Legal Framework

Patent claim construction represents an issue of law, to be decided by the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citing *Markman*). When a court engages in patent construction, "the focus is on the

6

objective test of what one of ordinary skill in the art at the time of the invention would . . . underst[an]d the term[s] to mean" in the context of the entire patent, including the specification. *Markman,* 52 F.3d at 986; *see also Netcraft Corp. v. eBay, Inc.,* 549 F.3d 1394, 1396-97 (Fed. Cir. 2008); *K-2 Corp. v. Salomon S.A.*,191 F.3d 1356, 1365 (Fed. Cir. 1999).

A comprehensive discourse regarding the claim construction calculus is found in the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005). Although the Federal Circuit in *Phillips* essentially endorsed its earlier decision in *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996), which was previously regarded by courts and practitioners as defining the contours of claim construction, it included an in-depth discussion regarding the relative importance of intrinsic and extrinsic evidence in a claim construction analysis. *Phillips,* 415 F.3d at 1324.

The principal teaching of *Phillips*, which does not constitute a significant departure from earlier claim construction jurisprudence, is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips,* 415 F.3d at 1312 (internal quotation marks omitted). It therefore follows that the language of a claim itself generally provides the most definitive source of guidance when determining the intended meaning of disputed terms. *See Vitronics,* 90

7

F.3d at 1582 ("[T]he patent itself, including the claims, the specification and, if in evidence, the prosecution history . . . [are] the most significant source[s] of the legally operative meaning of disputed claim language."). Words contained within a patent normally should be given their ordinary and customary meaning, considered from the perspective of a person of ordinary skill in the art in question at the time of the invention – that is, the effective filing date of the patent application. *Phillips,* 415 F.3d at 1313 (citing, *inter alia*, *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

While it is true that the words of patent claims will generally control, they should not be interpreted in isolation, in derogation of other portions of the patent. *Phillips*, 415 F.3d at 1313. Rather, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* In this respect, a patent specification, which some liken to an internal dictionary, must be carefully reviewed to determine whether, for example, the inventor has used a particular term in a manner that deviates from its ordinary meaning. *Id.* at 1314-15; *see also Vitronics,* 90 F.3d at 1582 ("Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use

terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.").

Indeed, a patent's specification often constitutes the "single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582. When resorting to a patent's specification for guidance in analyzing disputed claim terms, courts must consider it as a whole, and all portions should be read "in a manner that renders the patent internally consistent." *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379-80 (Fed. Cir. 2001). "[W]hile it is true that claims are to be interpreted *in light of* the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims[.]" *Sjolund v. Musland,* 847 F.2d 1573, 1581 (Fed. Cir. 1988) (emphasis in original). "Nor should particular embodiments in the specification be read into the claims; the general rule is that the claims of a patent are not limited to the preferred embodiment." *Cornell Univ. v. Hewlett-Packard Co.,* 313 F. Supp. 2d 114, 126 (N.D.N.Y. 2004) (Mordue, C.J.) (citing, *inter alia*, *Texas Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed. Cir. 2002)).

In addition to the claim terms themselves and the patent's specification, a third category of relevant intrinsic evidence worthy of

9

consideration is the patent's prosecution history. *Vitronics,* 90 F.3d at 1582. That history, which typically chronicles the dialogue between the inventor and the PTO leading up to the issuance of a patent, and thus can act as a reliable indicator of any limitations or concessions on the part of the applicant, oftentimes proves highly instructive on the issue of claim construction. *Philips*, 415 F.3d at 1317.

If analysis of the available intrinsic evidence resolves any perceived ambiguity in a disputed claim term, then the inquiry is ended. *Vitronics*, 90 F.3d at 1583. Where, on the other hand, there remains uncertainty regarding a claim after consideration of all available intrinsic evidence, the court may then turn to available extrinsic sources, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles, to assist in reconciling any conflicting intrinsic indicators. *Id.* at 1584. It should be noted, however, that extrinsic evidence may only be used to aid the court in understanding patent claims, and cannot be relied upon to justify any departure from or contradiction of the actual claim language employed by the applicant. *Id.* To assist in resolving an ambiguity, in its discretion, a court may admit and rely on prior art, whether or not it is cited in the specification or file history. *Id.* at 1584-85. Prior art and dictionaries, as publicly accessible objective information, are, for obvious reasons, preferable to expert testimony as tools for resolving

ambiguity. *Id.* at 1585; *see also Texas Digital Sys.*, 308 F.3d at 1202-03.

Ultimately, interpretation of the terms of a patent claim can only be determined with a full understanding of what the inventor actually invented and intended to encompass within the scope of his patent claims. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). For this reason, when inventors distinguish their invention from prior art, that prior art is properly excluded from coverage of the patent's claims. *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 267 F. Supp. 2d 533, 543 (N.D. W. Va. 2003) (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1343 (Fed. Cir. 2001)).

B. The Parties' Proposed Constructions

The parties dispute the construction of only one term: "channel." Defs.' Brief (Dkt. No. 36) at 6; Plf.'s Brief (Dkt. No. 37) at 6. The parties' disagreement turns on whether the term refers only to the space within the structure that defines the boundaries of the channel, as the plaintiff contends, or instead includes the structure that defines and forms the space, a position advocated by the defendants. *Id.* Plaintiff proposes that the term channel be construed as "an open passageway." Plf.'s Brief (Dkt. No. 37) at 6. Defendants counter that it should be defined to mean a "structure having a bottom and two raised side edges in a cross section."

Defs.' Brief (Dkt. No. 36) at 6.

### C. Whether the Disputed Term Needs Further Construction

Before turning to the task of defining the disputed term, the court must first determine whether further refinement is necessary, or, instead, the term is susceptible of being understood and applied by a jury without additional guidance.

Claim terms "are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Phillips*, 415 F.3d at 1312-13). Some of the terms used in a patent's claims are common words capable of being understood by a jury, while others are more technical and specific to the patent in suit, requiring further clarification or refinement. *02 Micro Int'l Ltd.*, 521 F.3d at 1360 (citing *Phillips*, 415 F.3d at 1314). As the Federal Circuit has recognized, trial courts are not required to construe each and every limitation set forth in an asserted patent claim. *02 Micro Int'l Ltd.*, 521 F.3d at 1362; *see also Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (finding no error in district court's failure to construe the term "addressed to a client"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001)

12

(finding no error in the district court's refusal to construe the terms "irrigating" and "frictional heat"); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 991-92 (Fed. Cir. 1999) (affirming district court's decision to afford "heading signal" its ordinary and accustomed meaning).

In this case, although "channel" appears to be a generally understood term with a common meaning, the court nonetheless remains obligated to construe it because the parties have presented a genuine dispute over its meaning. *See 02 Micro Int'l Ltd.*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."), *accord Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010); *see also Motorola Mobility, Inc. v. TiVo, Inc.*, No. 11-CV-0053, 2012 WL 6087792, *9 (E.D. Tex. Dec. 6, 2012) ("Although Motorola proposes plain meaning, the parties have presented a fundamental dispute regarding the scope of a claim term, and the Court has a duty to resolve that dispute."). Accordingly, I conclude that the court would be shirking its claim construction responsibility were it not to resolve the parties' dispute and construe the disputed term.

### D. Construction of the Disputed Term

The essence of the '781 Patent invention, an embodiment of which is disclosed in Claim 1 of the patent, is the existence of a removable upper wall that slides into two vertical side channels and is received by a longitudinal, horizontal channel in such a way that the upper wall overlaps with the base unit, which, like the upper wall, is composed of a bullet resistant material, to maximize protection for the user. '781 Patent, 2:59-3:15. This is accomplished through use of the S-shaped bracket assembly, a cross-section of which is depicted in Figure 5. *Id.* at 2:41-42. That figure depicts the lower portion of the upper wall **18** embedded in a space defined by the lower channel member **44**. *Id.* at Fig. 5. It also shows the upper portion of the base unit **16** inserted into a rectangular-shaped space formed by the upper channel member **42**. *Id.* The critical issue is whether the term "channel" includes the structures referred to as the "lower channel member" **44** and "upper channel member" **42**, or instead merely the U-shaped spaces within those structures.

The '781 Patent specification, though not without exception, appears to support plaintiff's position that the term "channel" should be construed to mean "an open passageway." Plf.'s Brief (Dkt. No. 37) at 6. It is well-established that "a patentee may choose to be his own lexicographer and

14

use terms in a manner that other than their ordinary meaning." *Vitronics*, 90 F.3d at 1582; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). In the '781 Patent specification, the patentee has referred to the structure associated with the upright side channels of the barrier as "upstanding channel members **46**, **48**," rather than "upstanding channels." '781 Patent, 2:49-50. Referring to Figure 5, the specification discloses an upper channel member **42** that engages the upper edge of the front wall **20**, and a lower channel member **44** that receives the upper wall **18**. *Id.* at 2:42-2:46. If the defendants are correct in their contention that channel includes the structure that forms it, then the term "member," as utilized in connection with the side, upper and lower channels, is rendered superfluous. The patentee's persistent use of the term "member" suggests an intent to differentiate between the space created by the structure and the surrounding structure. In short, these statements within the patent specification persuasively suggest that the patentee intended to use the term "channel member" to define the structure forming the channel, and thus intended that the channel refer only to the space within.

Defendants offer two arguments to counter this theory. First, they consider it significant that, after describing the mechanisms associated

with the upper channel member **42** and lower channel member **44**, the patent specification goes on to refer to what was previously identified as "the lower channel member **44**" as only the "lower channel **44**." '781 Patent, 2:42-49. Defendants argue that this reflects an intent to equate "channel" with "channel member," and that the terms are therefore interchangeable, both intended to include the structure surrounding the space into which the front and upper walls are positioned. I do not regard this isolated failure to include the word "member" as determinative, and instead attribute its omission to the patentee being less than precise in describing the embodiment reflected in the corresponding figure.[4] Simply stated, the patentee's isolated deviation from the use of the otherwise consistent term "lower channel member" does not conclusively establish an intention to define "channel" as including the structure that forms it.

     Defendants also contend that, through its dialogue with the Patent and Trademark Office ("PTO") when prosecuting the patent, inventor Collins White and his authorized representatives made statements and alterations to the original patent application allegedly reflecting his

---

[4]     This is not the only instance in which the patentee has demonstrated carelessness. As was previously noted, while the specification initially identifies the base unit as **16** in Figure 1, '781 Patent, 2:21 & 2:24, three lines later, the specification identifies the base unit as **14**, which Figure 1 plainly reveals is actually the armed assailant from whom the person utilizing the patented invention seeks protection. '781 Patent, 2:27 and Fig. 1.

acknowledgment that the term "channel" includes the defining structure. Defs.' Brief (Dkt. No. 36) at 7-8. As an example, they cite a communication dated November 3, 2008, from the inventor's attorney, David L. Nocilly, Esq., to the PTO examiner. Defs.' Brief Exh. 1 (Dkt. No. 36) at 13-23. In it, Attorney Nocilly refers to an option to the arrangement reflected in Figure 5, in which "a channel for the upper wall could be attached directly to or integrally formed with the upper wall," and states that "[a]lthough it is inherent that a channel has edges, the recitation of the edges is not necessary in any of the claims[.]" *Id.* at 20. The fact that a channel has an edge, however, does not necessarily mean that the structure creating that edge is a part of the channel. It is, of course, possible that "edge" simply refers to the boundary that defines where the space (or channel) ends and the structure creating the space (or channel) begins.

I note, moreover, that later portions of that same communication to the PTO examiner confirm that the term channel does not refer to structure. For example, the means by which the upper wall is releasable from the base unit is described as a "U-shaped bracket that is adapted to allow the upper wall to be slid into and out of engagement with the first wall of the base unit." Defs.' Brief Exh. 1 (Dkt. No. 36) at 21, 22. According to the patentee, then, the structure forming the groove into

17

which the upper wall fits is a U-shaped bracket, not a channel. These portions of the patent prosecution history convincingly buttress the conclusion that the patentee did not intend that the term "channel" refer to or include any portion of a structure, but instead intended that the term refer to the space, or groove, created by the structure.

Having determined that defendants' proposed construction is inconsistent with the manifest intent of the patentee, I now turn to the parties' competing proposed definitions, neither of which, I conclude, precisely articulates the meaning of the term as it is used in the '781 Patent. Instead, in order to assist the jury in performing its task of determining the issue of infringement, I recommend that the term "channel" be construed as "an open passageway or groove that is formed by a structure that defines the boundaries of the passageway or groove." This construction is the most defensible in light of the patent's specification and intrinsic evidence.

III. SUMMARY AND RECOMMENDATION

Although somewhat inartfully drafted, the '781 Patent involves a product that is not particularly complex, and is described by terms that are largely understandable without the need for technical, expert assistance or further refinement. While on its face the claim term now at issue, "channel," is one such term, it nonetheless requires construction in light of

18

the parties' disagreement over whether it embodies the structure forming and defining a groove, passageway, or space, or instead refers only to the space created by the structure. Based upon my consideration of the patent's specification and the available intrinsic evidence, it is hereby respectfully

RECOMMENDED that the court construe the term "channel" to mean "an open passageway or groove that is formed by a structure that defines the boundaries of the passageway or groove."

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

Dated: March 8, 2013
Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge